UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) NO. | _____ |
| v. | ) | |
| | ) | 18 U.S.C. § 2 |
| [1] ERIK CHARLES MAUND | ) | 18 U.S.C. § 924(c)(1)(A) |
|     a/k/a "Erik" or "Erik Moore" | ) | 18 U.S.C. § 924(j)(1) |
| | ) | 18 U.S.C. § 1201(a) |
| [2] GILAD PELED | ) | 18 U.S.C. § 1201(c) |
| | ) | |
| [3] BRYON BROCKWAY | ) | |
| | ) | |
| [4] ADAM CAREY | ) | |

I N D I C T M E N T

THE GRAND JURY CHARGES:

COUNT ONE

At all times material to this Indictment:

Introductory Allegations

1.     **[1] ERIK CHARLES MAUND** was married, living in Austin, Texas, and was a partner in Maund Automotive Group, a company founded by his father, which included Toyota and Volkswagen car dealerships.

2.     **[1] ERIK CHARLES MAUND** sometimes traveled to Nashville, Tennessee, to visit a relative.

3.     Victim H.W. was a female individual who lived in the Nashville, Tennessee area.

4.     On or about Monday, February 3, 2020, **[1] ERIK CHARLES MAUND,** using an alias of "Erik" or "Erik Moore," emailed Victim H.W., with whom he had had a prior relationship, and advised he would be in Nashville, Tennessee on "Wednesday and Thursday night," and "would love to see you [Victim H.W.] again."

5. **[1] ERIK CHARLES MAUND** then utilized a phone number registered to him and his business in order to contact Victim H.W. and schedule their meeting at the hotel where he intended to stay in Nashville.

6. On or about February 5, 2020, **[1] ERIK CHARLES MAUND** traveled to Nashville, Tennessee, and stayed at a hotel in downtown Nashville from February 5 through February 7, 2020.

7. On Wednesday, February 5, 2020, **[1] ERIK CHARLES MAUND** utilizing the same phone number he had previously contacted Victim H.W. on, sent the following message: "Good day beautiful! Looking forward too [sic] later. I'm in Nashville. I'll meet you in the bar like last time. Text me when you arrive."

8. Victim W.L. was a male individual who lived in the Nashville, Tennessee, area, who had a personal romantic relationship with Victim H.W. at various times.

9. On or about March 1, 2020, Victim W.L. texted **[1] ERIK CHARLES MAUND** at the same phone number **[1] ERIK CHARLES MAUND** used to reach out to Victim H.W.

10. Victim W.L. sent a series of text messages to **[1] ERIK CHARLES MAUND** in which Victim W.L. demanded some kind of monetary payment from **[1] ERIK CHARLES MAUND** and threatened to expose **[1] ERIK CHARLES MAUND's** relationship with H.W. if Victim W.L. did not receive the payment.

11. Individual 1, was a senior employee of Maund Automotive Group, who lived in the Austin, Texas area.

12. On or about March 1, 2020, the same date that Victim W.L. contacted **[1] ERIK CHARLES MAUND**, Individual 1 reached out to **[2] GILAD PELED**.

13. **[2] GILAD PELED** was an individual living in Austin, Texas, who held himself out as a former member of the Israeli Defense Forces and former member of the Israeli Mossad and who owned Speartip Security, formerly known as Speartip Enterprises, ("Speartip Security") a security services business based in Austin, Texas. Responding to extortion demands was a service that Speartip Security advertised on their website.

14. **[3] BRYON BROCKWAY** was a former active duty United States Marine, who had previously served in Force Recon, a Special Operations Capable (SOC) unit, while in the military. BROCKWAY lived in Austin, Texas, and owned his own security company in Austin, Texas, known as Ink Force LLC. He also worked as an independent contractor for a second security company.

15. Individual 2 was a relative of **[3] BRYON BROCKWAY** who worked for a security company primarily focused on Internet-based security, including removing damaging information about clients on social media and other Internet-based websites.

16. **[4] ADAM CAREY** was a former active duty United States Marine, living in North Carolina, who had previously served in the Marine Corps Forces Special Operations Command (MARSOC) while in the military. He also worked as an independent contractor for other security companies.

<u>Kidnapping Conspiracy</u>

17. Between on or about March 1, 2020, and continuing up through the date of this indictment, in the Middle District of Tennessee and elsewhere, **[1] ERIK CHARLES MAUND [2] GILAD PELED, [3] BRYON BROCKWAY,** and **[4] ADAM CAREY** did combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to knowingly and unlawfully seize, confine, kidnap, abduct, and carry away Victim H.W.

and Victim W.L. and hold for ransom, reward, and otherwise, and, in committing and in furtherance of the commission of the offense, did travel in interstate commerce and did use a means, a facility, and an instrumentality of interstate commerce, to wit: motor vehicles, cellular telephones, encrypted communication services, and other modes of communication, in violation of Title 18, United States Code, Section 1201(a) and (c).

Manner And Means

18. The manner and means by which **[1] ERIK CHARLES MAUND [2] GILAD PELED, [3] BRYON BROCKWAY, [4] ADAM CAREY,** and others known and unknown to the Grand Jury carried out the conspiracy include, among other things:

   a. It was part of the conspiracy that **[1] ERIK CHARLES MAUND [2] GILAD PELED, [3] BRYON BROCKWAY, [4] ADAM CAREY,** and others known and unknown to the Grand Jury, agreed to kidnap, threaten, and intimidate Victim H.W. and Victim W.L. in retaliation for and in response to Victim W.L.'s attempted extortion of **[1] ERIK CHARLES MAUND**;

   b. It was further part of the conspiracy that **[3] BRYON BROCKWAY** and **[4] ADAM CAREY**, at the direction of **[1] ERIK CHARLES MAUND** and **[2] GILAD PELED**, would murder Victim H.W. and Victim W.L.

   c. It was further part of the conspiracy that **[1] ERIK CHARLES MAUND [2] GILAD PELED, [3] BRYON BROCKWAY, [4] ADAM CAREY**, and others known and unknown to the Grand Jury, utilized cellular telephones, email accounts, and encrypted messaging applications, such as Signal, to communicate with each other about the kidnapping and murder of Victim H.W. and Victim W.L.

4

d. It was further part of the conspiracy that **[3] BRYON BROCKWAY** and **[4] ADAM CAREY** traveled in interstate commerce to Nashville, Tennessee to effectuate the kidnapping of Victim H.W. and Victim. W.L.

e. It was further part of the conspiracy that **[4] ADAM CAREY** established a Pinger account for the purpose of communicating and attempting to communicate with Victim H.W. and Victim W.L.

f. It was further part of the conspiracy that **[3] BRYON BROCKWAY** and **[4] ADAM CAREY** kidnapped and attempted to kidnap Victim H.W. and Victim W.L. from an apartment complex located on Hillmeade Drive in Nashville, Tennessee.

g. It was further part of the conspiracy that **[3] BRYON BROCKWAY** and **[4] ADAM CAREY** murdered Victim W.L. by shooting Victim W.L. multiple times including two shots to his head, at least one of which was near his right temple.

h. It was further part of the conspiracy that **[3] BRYON BROCKWAY** and **[4] ADAM CAREY** transported Victim H.W. and the body of Victim W.L. to a construction site located on Old Hickory Boulevard in Nashville, Tennessee.

i. It was further part of the conspiracy that **[3] BRYON BROCKWAY** and **[4] ADAM CAREY** murdered Victim H.W. by shooting Victim H.W. multiple times including one shot to her head near her right temple.

j. It was further part of the conspiracy that **[3] BRYON BROCKWAY** and **[4] ADAM CAREY** discarded Victim H.W.'s and Victim W.L.'s bodies at the construction site.

k. It was further part of the conspiracy that **[1] ERIK CHARLES MAUND** paid **[2] GILAD PELED, [3] BRYON BROCKWAY, [4] ADAM CAREY,** and others

known and unknown to the Grand Jury, a sum of money, totaling more than $750,000, for carrying out the kidnapping and murder of Victim H.W. and W.L.

Overt Acts

19. In furtherance of the conspiracy and to effect the objects of the conspiracy, at least one of the co-conspirators committed and caused to be committed at least one of the following overt acts, among others:

a. Between on or about March 1, 2020, and on or about March 12, 2020, **[1] ERIK CHARLES MAUND** contacted and hired, either directly or indirectly, **[2] GILAD PELED, [3] BRYON BROCKWAY,** and **[4] ADAM CAREY,** to assist in dealing with Victim W.L.'s extortion demands and threats to expose **[1] ERIK CHARLES MAUND's** relationship with Victim H.W.

b. On or about March 1, 2020, **[1] ERIK CHARLES MAUND** used Individual 1 to contact **[2] GILAD PELED** regarding W.L.'s extortion messages.

c. Between on or about March 1, 2020 and March 12, 2020, Individual 1 and **[2] GILAD PELED** communicated multiple times about dealing with W.L. and his extortion threats and demands.

d. Between on or about March 1, 2020, and on or about March 12, 2020, **[1] ERIK CHARLES MAUND [2] GILAD PELED, [3] BRYON BROCKWAY, [4] ADAM CAREY**, and others known and unknown to the Grand Jury, agreed to kidnap, threaten, intimidate, and murder Victim H.W. and Victim W.L. in retaliation for Victim W.L.'s attempted extortion of **[1] ERIK CHARLES MAUND**.

e. On or about March 5, 2020, **[1] ERIK CHARLES MAUND** withdrew $15,000 from a Bank of America account he controlled.

f.  On or about March 5, 2020, Individual 2 prepared an "Intelligence Report" on Victim H.W. and provided that report to **[2] GILAD PELED**.

g.  On or about March 7, 2020, **[4] ADAM CAREY** and others known and unknown to the Grand Jury traveled from out of state to Nashville, Tennessee in order to surveil Victim H.W. and Victim W.L.

h.  On or about March 7, 2020, **[4] ADAM CAREY** created a Pinger account for the purpose of communicating and attempting to communicate with Victim H.W. and Victim W.L.

i.  Between on or about March 7, 2020, and March 11, 2020, **[4] ADAM CAREY** and others known and unknown to the Grand Jury utilized that Pinger account to communicate and attempt to communicate with Victim H.W. and Victim L.W.

j.  On or about March 9, 2020, **[2] GILAD PELED** received a document entitled "Tennessee SitRep," which stated that **[4] ADAM CAREY** and others had surveilled Victim H.W.; confirmed her address and vehicle; confirmed the fact that Victim W.L. had been staying at Victim H.W.'s residence; and advised that **[4] ADAM CAREY** and others would use "everything at our disposal to include, intimidation…" to stop the attempted extortion of **[1] ERIK CHARLES MAUND**.

k.  On or about March 10, 2020, **[4] ADAM CAREY** and others traveled to Victim H.W.'s residence and unsuccessfully attempted to contact her.

l.  On or about March 10, 2020, **[4] ADAM CAREY** and others followed Victim W.L. to a grocery store and attempted to approach him in the parking lot, unsuccessfully.

7

m. On or about March 11, 2020, **[2] GILAD PELED** deposited $8,000 in cash in Speartip Security's business account and $7,000 cash into his personal checking account for a total $15,000 cash deposits into bank accounts that he controlled.

n. On or about March 11, 2020, **[3] BRYON BROCKWAY** traveled from Austin, Texas, to Nashville, Tennessee, rented a vehicle from Hertz, and eventually met up with **[4] ADAM CAREY**.

o. On or about March 12, 2020, **[1] ERIK CHARLES MAUND** and **[2] GILAD PELED** communicated with each other using various means, including cellular telephones, email, and encrypted messaging applications, such as Signal, and discussed the kidnapping and murder of Victim H.W. and Victim W.L.

p. On or about March 12, 2020, **[1] ERIK CHARLES MAUND** transferred $150,000, via wire, from a Bank of America bank account controlled by **[1] ERIK CHARLES MAUND** to a JP Morgan bank account controlled by **[2] GILAD PELED**.

q. On or about March 12, 2020, **[2] GILAD PELED** and **[3] BRYON BROCKWAY** communicated with each other using various means, including cellular telephones, email, and encrypted messaging applications, and discussed the kidnapping and murder of Victim H.W. and Victim W.L.

r. On or about March 12, 2020, **[3] BRYON BROCKWAY** and **[4] ADAM CAREY**, while armed with firearms, confronted Victim H.W. and Victim W.L. in the parking lot of Victim H.W.'s apartment complex with the intent to seize, confine, kidnap, abduct, carry away, and hold Victim H.W. and Victim W.L for ransom, reward, and otherwise.

8

Case 7:21-mj-01309-RJ   Document 1   Filed 12/10/21   Page 8 of 12

s.      On or about March 12, 2020, during this initial confrontation at the apartment complex, which was part of the kidnapping plan, **[3] BRYON BROCKWAY** and **[4] ADAM CAREY**, aided and abetted by each other, murdered Victim W.L. by shooting him multiple times including two shots to his head one of which was near his right temple.

t.      On or about March 12, 2020, **[3] BRYON BROCKWAY** and **[4] ADAM CAREY**, aided and abetted by each other, seized, confined, kidnapped, abducted, and carried away Victim H.W. and Victim W.L. and transported them in Victim H.W.'s 2005 Acura sedan and **[3] BRYON BROCKWAY's** rental vehicle to a construction site located on Old Hickory Boulevard in Nashville, Tennessee.

u.      On or about March 12, 2020 **[3] BRYON BROCKWAY** and **[4] ADAM CAREY**, aided and abetted by each other, murdered Victim H.W. by shooting her multiple times including a shot to the head near her right temple.

v.      On or about March 12, 2020 **[3] BRYON BROCKWAY** and **[4] ADAM CAREY** then discarded Victim H.W.'s and Victim L.W.'s bodies at the construction site.

w.      On or about March 13, 2020, at 2:54 a.m., within hours of the kidnapping and murders of Victim H.W. and W.L., the Pinger account utilized by **[4] ADAM CAREY** and others to communicate and attempt to communicate with Victim H.W. and Victim W.L. was deleted.

x.      On or about March 13, 2020, **[3] BRYON BROCKWAY** returned the rental car to Hertz.

y. On or about March 13, 2020, **[4] ADAM CAREY** drove **[3] BRYON BROCKWAY** to Memphis, Tennessee, where **[3] BRYON BROCKWAY** caught a flight to Austin, Texas.

z. Between on or about March 13, 2020, and on or about March 15, 2020, **[4] ADAM CAREY** traveled by motor vehicle from Memphis, Tennessee to Austin, Texas.

aa. Between March 11, 2020, and the present, **[1] ERIK CHARLES MAUND** transferred in excess of $750,000, via wire, from a Bank of America bank account controlled by **[1] ERIK CHARLES MAUND** to a JP Morgan bank account controlled by **[2] GILAD PELED** as payment to **[2] GILAD PELED**, **[3] BRYON BROCKWAY**, and **[4] ADAM CAREY** for the kidnapping and murder of Victim H.W. and Victim W.L. All in violation of Title 18, United States Code, Section 1201(c).

## COUNT TWO

THE GRAND JURY FURTHER CHARGES:

On or about March 12, 2020, in the Middle District of Tennessee, **[1] ERIK CHARLES MAUND [2] GILAD PELED, [3] BRYON BROCKWAY,** and **[4] ADAM CAREY**, aided and abetted by one another, willfully and unlawfully seized, confined, kidnapped, abducted, and carried away Victim H.W. and Victim W.L. for ransom, reward and otherwise and, in furtherance of the commission of that offense, traveled in interstate commerce and used a means, a facility and an instrumentality of interstate commerce, to wit: motor vehicles, cellular telephones, encrypted communication services, and other modes of communication, and in the course of the kidnapping, did cause the death of Victim H.W. and Victim W.L.

In violation of Title 18, United States Code, Sections 1201(a)(1) and 2.

COUNT THREE

THE GRAND JURY FURTHER CHARGES

On or about March 12, 2020, in the Middle District of Tennessee, and elsewhere **[1] ERIK CHARLES MAUND [2] GILAD PELED, [3] BRYON BROCKWAY,** and **[4] ADAM CAREY**, aided and abetted by one another, did knowingly use, carry, brandish, and discharge a firearm, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, Kidnapping Resulting in the Death of Victim H.W. and Victim W.L., and in the course of that crime did cause the death of a person, Victim H.W. and Victim W.L., through the use of a firearm, the killing of whom was murder as defined in Title 18, United States Code, Section 1111.

In violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(j)(1), and 2.

FORFEITURE ALLEGATION

THE GRAND JURY FURTHER CHARGES:

1. The allegations contained in this Indictment are hereby re-alleged and incorporated by reference as if fully set forth in support of this forfeiture.

2. Upon conviction of Counts 1 or 2 of this Indictment, **[1] ERIK CHARLES MAUND [2] GILAD PELED, [3] BRYON BROCKWAY,** and **[4] ADAM CAREY** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(c) by Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s), including but not limited to, a money judgment in an amount to be determined representing the value of the property subject to forfeiture.

3. Upon conviction of Count 3 of this Indictment, **[1] ERIK CHARLES MAUND [2] GILAD PELED, [3] BRYON BROCKWAY,** and **[4] ADAM CAREY** shall forfeit to the

United States, pursuant to Title 18, United States Code, Section 924(d)(1) by Title 28, United States Code, Section 2461, any firearm or ammunition involved in or used in the offense.

4. If any of the property described above, as a result of any act or omission of **[1] ERIK CHARLES MAUND [2] GILAD PELED, [3] BRYON BROCKWAY,** and **[4] ADAM CAREY**:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of **[1] ERIK CHARLES MAUND [2] GILAD PELED, [3] BRYON BROCKWAY,** and **[4] ADAM CAREY** up to the value of said property listed above as subject to forfeiture.

A TRUE BILL:

_____
GRAND JURY FOREPERSON

MARK H. WILDASIN
ACTING UNITED STATES ATTORNEY

*[signature]*
ROBERT E. McGUIRE
ASSISTANT UNITED STATES ATTORNEY

12

Case 7:21-mj-01309-RJ   Document 1   Filed 12/10/21   Page 12 of 12